UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 3:19-54** |
| **ADAM KAMOR,** | : | **(JUDGE MANNION)** |
| **Defendant** | : | |

**MEMORANDUM**

Before the court is the *pro se* motion to vacate conviction and correct sentence pursuant to 28 U.S.C. §2255 filed by the defendant Adam Kamor based upon claims of due process violations, ineffective assistance of counsel, and a breach of his plea agreement. (Doc. 59). For the reasons set forth below, the motion will be **DENIED IN ITS ENTIRETY** without the need for an evidentiary hearing.

**I.   BACKGROUND**

By way of relevant background, on February 15, 2019, Kamor plead guilty, pursuant to a plea agreement, (Doc. 3), to one count of money laundering, in violation of 18 U.S.C. §1956(a)(1), and one count of income tax evasion, in violation of 26 U.S.C. §7201.

The government, (Doc. 65 at 3), states that, the parties entered several stipulated recommendations in the plea agreement with respect to the

sentencing guidelines, "including the loss amounts for both charges, that the offense resulted in a substantial financial hardship to the victim, that the offense involved sophisticated money laundering, and that Kamor used a special skill to facilitate the offense." (citing Doc. 3 at ¶ 12). Further, "the parties agreed that a sentence within the associated guidelines range would be reasonable, and the United States agreed to recommend the minimum term of imprisonment under the guidelines." (Id.) (citing Doc. 3 at ¶ 13). (*See also* Doc. 65-1, guilty plea hearing transcript).[1]

A Presentence Report ("PSR") was ordered by the court and prepared by the Probation Office. The Probation Office calculated Kamor's total offense level at 24. (Doc. 16, PSR ¶¶ 13-38). Since Kamor's Criminal History Category was I, his advisory sentencing guideline range was 57 to 71 months of imprisonment and one to three years of supervised release. (Id. at 41, 61-66).

Prior to sentencing, the victim of Kamor's crime submitted an impact statement to the court, through counsel, and under seal. (*See* Doc. 67, filed under seal). Kamor also attached a copy of the sealed victim impact

---

[1] This case was originally assigned to Judge Munley who accepted Kamor's guilty plea and sentenced him. Following Judge Munley's passing, the undersigned was assigned Kamor's case for further proceedings.

statement to his §2255 motion.² (Doc. 59 at 21-23). As a backdrop to the statement, the government, (Doc. 43 at 1-2), explains:

> The charges arose out of Kamor's business as a certified public accountant in Wilkes-Barre, Pennsylvania. Between 2014 and 2018, Kamor diverted nearly $1.4 million from one of his clients—a nonprofit organization—through a series of shell accounts under Kamor's control. Kamor ultimately lost nearly all of the embezzled funds while gambling at the Mohegan Sun Pocono, with the United States recovering only $32,443 through account seizures. In advance of Kamor's sentencing, the parties, the Probation Office, and the Court were provided with a sealed victim impact statement. *See* [Doc. 45]. In that statement, the nonprofit victim expressed its fervent request to remain anonymous, and described the damage that Kamor's actions caused to its ongoing operations. During Kamor's sentencing, Judge Munley referenced the victim impact statement repeatedly.

The statement was provided to the parties on June 21, 2019, prior to the June 24, 2019 sentencing. Also, on June 21, 2019, Kamor filed a sentencing memorandum, under seal, (Doc. 24), in which he requested a variance below his advisory guidelines. Kamor's trial counsel also addressed this issue at the sentencing hearing. (*See* Doc. 65, Att. 2, sentencing hearing transcript). Kamor's counsel specifically refuted some of the positions taken by the victim in its impact statement. (Id. at 4-5). Kamor, during his allocution,

---

²As the government requests, the victim impact statement submitted by Kamor, (Doc. 59 at 21-23), will be sealed. *See* U.S. v. Clark, 335 Fed.Appx. 181, 183-84 (3d Cir. 2009) (holding that "redacting the names of the victims and their family members was also consistent with the Crime Victims' Rights Act, which specifically codified the victim's 'right to be treated with fairness and with respect for the victim's dignity and privacy.'") (citing 18 U.S.C. §3771(a)(8)).

did not address the victim impact statement. (Id. at 7-8). Pursuant to its representation in the plea agreement, the government recommended a 57-month prison sentence, which was the minimum under the guidelines. (Id. at 3-4). The court then conducted a thorough analysis of the sentencing factors under 18 U.S.C. §3553(a), and imposed a sentence of 84 months of imprisonment which was a 13-month upward variance from Kamor's advisory guidelines range. (Id. at 8-13). The court, (Id. at 13), explained why it imposed the upward variance by considering the §3553(a) factors, as well as the victim impact statement, and stated:

> The variance is imposed because of the serious impact on the community, for his actions will have long-term effects on our community. It is unlikely that full restitution will be made – be able to made by the defendant... the upward variance is imposed – is imposed to reflect the seriousness of the offense, to act as a deterrent and address the community impact.

Notably, Kamor did not object, when given an opportunity, to the upward variance or to any other aspect of the sentencing proceeding. (Doc. 65-2 a17-18).

In the Statement of Reasons, the court further explained Kamor's sentence, (Doc. 30 at 4), and stated:

> [A] sentence of eighty-four (84) months imprisonment was need[ed] to adequately address the sentencing objectives of punishment and deterrence. The sentence imposed satisfies the purposes set forth in 18 U.S.C. §3553(a)–including the necessity of deterrence and just punishment, promotion of respect for the law, protection of the public, avoidance of unwarranted disparities, and assurance of correctional treatment for the defendant and restitution to any victims of the offense

– and reflects full consideration of all factors relevant to the sentencing determination–including the nature and seriousness of the offense, the history and characteristics of the defendant, the kinds of sentencing available, and the advisory range and policies prescribed by the United States Sentencing Commission.

Thus, on June 24, 2019, Kamor was sentenced to 84 months' imprisonment on count one and 60 months' imprisonment on count two, to run concurrently, followed by three years of supervised release. (Doc. 27). Kamor also was ordered to pay restitution of $1,353,244.56 to the victim of his crimes, i.e., Corporation #1, and $241,623 to the IRS.

On July 5, 2020, Kamor appealed his judgment of sentence to the Third Circuit arguing, in part, that the court did not adequately justify the upward variance from the advisory sentencing guidelines which the court imposed. The Third Circuit affirmed Kamor's judgment of sentence. (Docs. 34 & 35). *See* United States v. Kamor, 811 Fed.Appx. 104, 107 (3d Cir. 2020). (*See also* Doc. 35-1). Kamor did not file any further appeal.

On April 30, 2021, Kamor filed the present motion to vacate with Exhibits. (Doc. 59). After being granted an extension of time, on June 22, 2021, the government filed a brief in opposition with Exhibits. (Doc. 65). Kamor was also granted an extension, and he filed a reply brief on August 2, 2021. (Doc. 71).

Kamor is presently confined at FCI Schuylkill where he is serving his prison sentence and his projected release date is June 30, 2025.

## II.     STANDARD

When a district court judge imposes a sentence on a defendant who believes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255. *See* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

The rule states, "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See* United States v. Bendolph, 409 F.3d 155, 165 n.15 (3d Cir. 2005) (stating district courts have the power to dismiss petitions *sua sponte* during the Rule 4 stage of habeas proceedings).

A Section 2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). A motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his federal sentence for any error that occurred at or prior to sentencing. *See* In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997). In order to prevail on a Section 2255 motion to vacate, set aside, or correct a sentence, the defendant must show "(1) an error of constitutional

magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." United States v. Bates, 2008 WL 80048, at *2 (M.D. Pa. Jan. 7, 2008) (quoting Mallett v. United States, 334 F.3d 491, 496-97 (6th Cir. 2003)). The defendant bears the burden of proof under Section 2255 and must demonstrate his right to relief by a preponderance of the evidence. United States v. Ayers, 938 F.Supp.2d 108, 112 (D. D.C. 2013).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel. The United States Supreme Court has found that "the right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Thus, under *Strickland*, to prove that his counsel was deficient at trial or sentencing, the defendant must convince the court of two factors, deficient performance by counsel and prejudice from that deficient performance. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. Satisfying the first factor, deficient performance, requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Id.* Substandard lawyering is not enough to obtain relief. In assessing an attorney's performance, courts apply a highly deferential level of scrutiny. *See* Marshall v. Cathel, 428 F.3d 452, 462 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). This deference is afforded because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

To satisfy the second factor of the *Strickland* test, "the defendant must show that the deficient performance prejudiced the defense" by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In other words, "the party claiming ineffective assistance 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008) (quoting Strickland, 466 U.S. at 694). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings . . . not every error that conceivably could have influenced the outcome undermines the reliability of the proceeding." *Id.* (quoting Strickland, 466 U.S. at 693). Additionally, counsel cannot be held to be ineffective for failing to pursue a meritless issue. Werts v. Vaughan, 228 F.3d 178, 203 (3d Cir. 2000).

Relief under section 2255 for ineffectiveness of counsel is only available to defendants who make adequate showings with respect to both factors of the *Strickland* test. See Strickland, 466 U.S. at 686. "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113.

### III.   DISCUSSION

The court has jurisdiction over Kamor's motion pursuant to 28 U.S.C. §§1331 and 2241.

In his §2255 motion for relief, (Doc. 59), Kamor requests the court to vacate his judgment of conviction and sentence entered on June 24, 2019, (Doc. 27), and to have him resentenced before a new judge. Alternatively, Kamor requests the court to reduce his sentence to time served and release him from prison. He bases his requests on four broad claims, which include claims of ineffective assistance of counsel. Essentially, Kamor asserts the following grounds in his motion: 1) due process violation by failing to include the written victim impact statement in the PSR, by failing to timely give him a copy of the statement prior to sentencing, and by failing to allow him time to controvert the assertions made in the statement that were relied upon by the court in imposing an upward variance for his sentence; 2) ineffective assistance of counsel regarding failing to review his direct appeal with him

prior to filing it, and failing to notify him of the appeal decision; 3) ineffective assistance of counsel for failing to object to the victim impact statement and by failing to request a continuance to consult with him about the statement; and 4) ineffective assistance of counsel for failing to file a motion for downward departure or variance at sentencing.

The victim impact statement was dated June 5, 2019, (Doc. 59 at 21-23), and authored by Attorney Robert Kelly, on behalf of a charitable Foundation from which Kamor embezzled more than $1.3 million. Kamor claims that the court improperly relied upon the statement and its unsupported representations, which he alleges to be hearsay, and found facts based on the statement which were not proven, to give him a 13-month upward variance amounting to a sentence of 84 months which was above the advisory guideline range of 57 to 71 months.

Initially, Kamor and his counsel received a copy of the victim impact statement in a timely fashion prior to sentencing. Kamor admits that his counsel received a copy of the statement on June 21, 2019, the Friday prior to his June 24, 2019 sentencing hearing. Notably, Kamor was not in prison at the time. (Doc. 11). Kamor and his counsel had more than ample time to review and discuss the statement, and to prepare their response to it.

Next, Kamor contends that the court improperly relied upon the victim impact statement to sentence him longer than the 57 months' imprisonment recommended by the government. Kamor claims that the court imposed a

sentence above the Sentencing Guidelines range and the government's recommendation based on its reliance on the victim impact statement and its unproven assertions. Kamor also claims that the victim impact statement contained erroneous assertions and that it negatively affected his sentence. Since the statement has been submitted by the parties, its content is not repeated herein.

The court, in its discretion, properly considered the victim impact statement for purposes of sentencing Kamor. As the Third Circuit in U.S. v. Clark, 335 Fed.Appx. 181, 183-84 (3d Cir. 2009), explained:

> the inclusion of the victim impact statements was proper pursuant to the Crime Victims' Rights Act ["CVRA"], which provides that "[i]n any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded ... [t]he right to be reasonably heard at any public proceeding in the district court involving ... sentencing." 18 U.S.C. §3771(b), (a)(4); see also U.S.S.G. §6A1.5 ("[T]he court shall ensure that the crime victim is afforded the rights described in 18 U.S.C. §3771 and in any other provision of Federal law pertaining to the treatment of crime victims."). [footnote omitted] "[T]he term 'crime victim' means a person directly and proximately harmed as a result of the commission of a Federal offense...." 18 U.S.C. §3771(e).]. Moreover, redacting the names of the victims and their family members was also consistent with the Crime Victims' Rights Act, which specifically codified the victim's "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. §3771(a)(8).

The Third Circuit, id. at 184, also pointed out that "[defendant] can identify no authority requiring that a victim's identity be revealed in a victim impact statement." In addition, the CVRA provides that the court shall ensure

that the crime victim is afforded "[t]he right to be reasonably protected from the accused." 18 U.S.C. §3771(a)(1). "It is this Court's duty, under the Act, to ensure that the victims are afforded their rights. 18 U.S.C. §3771(b)(1)." United States v. Madoff, 626 F.Supp. 2d 420, 426 (S.D. N.Y. 2009).

Further, the Third Circuit indicated that "[t]he Federal Rules of Evidence do not apply to sentencing hearings, Fed.R.Evid. 1101(d)(3), and 'the Confrontation Clause ... does not prevent the introduction of hearsay testimony at a sentencing hearing[.]'" Id. (citation omitted).

There was no due process violation regarding the court's consideration of the victim impact statement since Kamor and his counsel had sufficient notice of it prior to sentencing, since he was afforded an opportunity to dispute the assertions in it and, since his counsel did in fact dispute some of the statement at sentencing.

Also, as government points out, (Doc. 65 at 15), in its brief:

Kamor deigned [agreed] not to personally challenge [the] assertion[s] made by the victim [in the statement] during his own allocation, or when offered an opportunity to raise any other issues at the conclusion of the sentencing proceedings. [Doc. 65-2] at 7-8, 17-18. Those omissions refute his current claim that he would have contested the victim impact statement, had he "been given the opportunity to address the Court." (citing Doc. 59 at 16).

Moreover, the court's decision to impose a sentence on Kamor with an upward variance of 13 months was also based on the §3553(a) factors, which the Third Circuit found were properly analyzed by the court. (Doc. 35-1 at 3-4). Since the court's analysis of the §3553(a) factors is in the record

from the sentencing hearing transcript, and is summarized above, it is not repeated. (*See also* Doc. 65 at 17 & Doc. 30).

In short, the court finds that Kamor has failed to satisfy either prong of the *Strickland* test with respect to his first claim. Kamor has failed to demonstrate how his counsel's handling of the victim impact statement fell below objective standards of attorney conduct, since the court properly considered it, and he cannot demonstrate prejudice stemming from his counsel's actions with respect to the statement since it was only one factor considered in addition to several other factors, such as the facts and circumstances of this case as well as the §3553(a) factors. As summarized by the government, (Doc. 65 at 16), with respect to the second *Strickland* prong:

> Kamor also fails to show that any alleged failure by his counsel to contest factual assertions contained in the victim impact statement gave rise to prejudice at sentencing. He does not contest the substance of the crime that he committed—stealing nearly $1.4 million—that his own non-profit client was a victim of that crime, or even the loss amount and substantial financial hardship caused to the victim. Indeed, Kamor agreed to the factual predicate underlying his conviction and stipulated to the associated guidelines enhancements in his plea agreement. (Doc. 3).

*See also* Strickland, 466 U.S. at 697 (the court can deny an ineffective assistance of counsel claim solely on a finding of no prejudice).

In any event, in its loss calculation at sentencing, the court can rely upon "other evidence in the record—specifically, the PSR and a victim impact statement [to] support [its] loss determination." United States v. Green, 516 F.App'x 113, 132 (3d Cir. 2013).

Further, the Third Circuit has found that Kamor's sentence was substantively reasonable despite the court's upward variance and imposition of a sentence above the government's recommended sentence. (Doc. 35-1 at 4-5).

As to Kamor's claim that the government breached his plea agreement when the court imposed a sentence of 84 months as opposed to the 57 months the government indicated it would recommend, it is of no merit since the agreement plainly stated that the court is not bound by the plea agreement and that it has the final decision with respect to Kamor's sentence, (Doc. 3 at 22-23). Further, the government kept its part of the bargain by recommending the 57 months at the sentencing hearing. Also, as the government notes, (Doc. 65 at 19 n. 4), "a review of the record reveals that the United States repeatedly recommended a sentence at the bottom of the guidelines, and referenced the [victim] impact statement as justification for that recommendation." (citing [Doc. 65-2] at 2-4).

Additionally, to the extent Kamor is deemed as trying to rely upon Alleyne v. United States, 133 S. Ct. 2151 (2013), "which held that any fact that increases a mandatory minimum sentence is an element of a crime that must be submitted to the jury", United States v. Green, 2016 WL 11201635, *4 (E.D. Pa. Dec. 9, 2016), by arguing that the court improperly increased his sentence based on alleged facts in the victim impact statement that were not proven, his claim is without merit. "*Alleyne*, …, is inapposite here," since the victim statement and its loss calculation was not used by the court in determining the applicable statutory penalties, and "the sentence imposed

[7 years] does not exceed the statutory maximum sentence for the crimes for which [Kamor] was convicted [i.e., the maximum sentence of imprisonment was 25 years]." *Id*. (*See* Doc. 3 at 1-2, 22). Further, in his plea agreement, (Doc. 3 at 8-9), Kamor "agree[d] that any legal and factual issues relating to the application of the Federal Sentencing Guidelines to [his] conduct, including facts to support any specific offense characteristic or other enhancement or adjustment and the appropriate sentence within the statutory maximums provided for by law, w[ould] be determined by the court after briefing, a pre-sentence hearing, and/or a sentencing hearing."

As his second claim, Kamor claims that his counsel was ineffective for failing to consult with him about the issues to be raised in his direct appeal and for failing to notify him of the Third Circuit's decision.

First, it is clear that Kamor was well aware of the Third Circuit's Mandate filed on May 20, 2020, (Doc. 35), when he signed his July 7, 2020, motion to unseal all of the records in his case that were sealed so that he could pursue as §2255 motion. (Doc. 36). It is also clear that Kamor knew about a collateral appeal of his sentence.

Second, the law is clear that counsel must consult with a defendant about an appeal. In United States v. Doss, 2017 WL 1709397, *3 (M.D. Pa. May 3, 2017), certificate of appealability denied, 2017 WL 5952261 (3d Cir. Aug. 25, 2017), the court stated:

> In Flores-Ortega, the Supreme Court held that defense counsel must consult with their client about an appeal in situations where a rational defendant would want to appeal or where the defendant actually expressed interest in appealing. Flores-Ortega, 528 U.S. at 480, 120

- 15 -

S.Ct. 1029. The Court defined "consult" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478, 120 S.Ct. 1029.

Here, appellate counsel, who was also trial counsel, undisputedly did consult with Kamor about his appeal and filed the appeal on his behalf. Counsel raised appropriate, non-frivolous claims, but the Third Circuit nonetheless affirmed Kamor's sentence. (*See* Doc. 35-1). Simply because counsel did not raise all of the issues on appeal Kamor wanted raised does not amount to ineffective assistance of counsel. "The Sixth Amendment does not require appellate counsel to raise every claim suggested by a client, even if those claims are colorable, as it runs the risk of burying good arguments—those that ... go for the jugular." Green, 2016 WL 11201635, *5 (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)). "Because post-trial counsel is permitted on direct appeal to forego claims, the Court cannot say this strategy was not sound." *Id*. "Moreover, [Kamor] has made no showing that had counsel raised [his additional] claims, [], he would have prevailed on appeal." *Id*.

Additionally, as the government points out, (Doc. 65 at 20-21), in its brief:

> [A]lthough appellate counsel did not raise factual disputes about the assertions contained in the victim impact statement, counsel did claim that reliance on that statement when justifying an upward variance constituted impermissible double-counting, as Kamor already received a sentencing guidelines enhancement for causing substantial financial hardship to the victim. *See* [Doc. 65] Attachment 5 at pp.7-8. That argument was ultimately rejected by the Court of Appeals, *see* [Doc.

65] Attachment 6, [*see also* Doc. 35-1 at 2, 5], but shows that appellate counsel did raise the issue in a manner designed to achieve relief.

Moreover, as the government states, (Doc. 65 at 22), "[a]lthough Kamor's own motion acknowledges a discussion with counsel about the merits of issues on appeal, [trial and] appellate counsel [Theron Solomon, Esq.] also executed an affidavit confirming that he discussed those issues with Kamor, and filed an appeal raising those deemed to have merit." (citing [Doc. 65-6]). Specifically, Solomon, (Doc. 65-6 at 1), averred:

> Prior to filing Mr. Kamor's appellate brief, [s*ee* Doc. 24], I consulted with him about potential issues to raise on appeal, including the substance of a victim impact letter that was referenced at his sentencing hearing. Following that consultation with Mr. Kamor, I prepared and filed an appellate brief that raised the issues that I, in my professional judgment, deemed worthy and appropriate to challenge on appeal.

No doubt that Kamor's counsel cannot be found ineffective for failing to raise a meritless claim on appeal. See United States v. Angell, 256 F.Supp.3d 557, 561 (E.D. Pa. 2017).

Here, Kamor fails to establish either prong of an ineffective assistance of counsel claim. He has failed to show that his appellate counsel's performance fell below a reasonable standard, or that he was prejudiced by counsel's failure to raise issues he wanted raised. Thus, Kamor's ineffective assistance of appellate counsel claims will be denied.

As to his fourth claim, Kamor alleges that his counsel was ineffective for failing to file a motion for downward departure or variance at sentencing.

However, the record belies Kamor's claim since his counsel did request the court "to apply a variance and sentence [Kamor] below guideline range under 18 U.S.C. §3553(a) because there are many mitigating factors present in this case." (Doc. 24, defense counsel sentencing memorandum). Kamor's counsel then addressed why the court should grant a downward variance below the guideline range.

Finally, the court need not accept Kamor's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record." Patton v. United States, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing United States v. Estrada, 849 F.2d 1304,1307 (10th Cir. 1988)). A review of the §2255 motion, the transcripts, exhibits, and the briefs of both parties, as well as the law and the claims, makes clear that Kamor's allegations are wholly unsupported by the record.

### IV. CERTIFICATE OF APPEALABILTY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Kamor has shown neither the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.

### V.    CONCLUSION

Therefore, the court finds no merit to any of Kamor's claims raised in his §2255 motion. Accordingly, Kamor is not entitled to Section 2255 relief and the court will **DENY IN ITS ENTIRETY** his motion to vacate. **(Doc. 59)**. An appropriate order will issue.[3]

s/ *Malachy E. Mannion*<br>
**MALACHY E. MANNION**<br>
**United States District Judge**

**DATE: February 25, 2022**
19-54-02

---

[3]Kamor has not requested an evidentiary hearing in his §2255 motion. However, even if he had, the court would deny the request. *See* Drayton v. United States, 2019 WL 1896601, at *8 (M.D. Pa. Apr. 29, 2019) (denying a motion to vacate without need for an evidentiary hearing because the defendant's claims of ineffectiveness of counsel were nothing more than a "series of subjective perceptions of the facts as well as unsubstantiated assertions regarding the alleged ineffectiveness of his counsel" that were wholly unsupported by the record). Thus, "as the record conclusively shows [Kamor] is not entitled to relief on any of [his] claims, his [§2255] motion will be denied without an evidentiary hearing." Green, 2016 WL 11201635, *5.